# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SANDRA ANN WILLIAMSON,
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:14-cv-731

Barrett, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 16).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in June 2011, alleging disability since April 28, 2011, due to pancreatitis, diabetes, gallstones, severe narrowing of disc space in the lower back, blood clot in portal vein, hypothyroidism, depression, anxiety, high triglycerides, and chronic pain. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On May 14, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since April 28, 2011, the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: diabetes mellitus, lumbosacral degenerative disc disease, a history of pancreatitis, a history of deep vein thrombosis, and depression (20 CFR §§ 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with co-workers, supervisors, and the public; (6) no jobs involving rapid production pace work or strict production quotas; and, (7) limited to jobs requiring no more than occasional changes in the work routine.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965).[1]

_____

[1]Plaintiff's past relevant work was as a dental assistant, a light, skilled position; a dental receptionist, a sedentary, semi-skilled position; and an optometric assistant, a sedentary, skilled position. (Tr. 21, 66-67, 317).

7. The [plaintiff] was born [in] . . . 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR §§ 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (*see*, SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 28, 2011, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 14-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as a clerical support worker (1,360 jobs locally, 229,000 jobs nationally), a quality control worker (200 jobs locally, 300,000 jobs nationally), and a stock clerk (1,700 jobs locally, 500,000 jobs nationally).  (Tr. 22, 67-68).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred in finding plaintiff has the RFC for

light work with restrictions; (2) the ALJ failed to properly weigh the opinions of treating

physician Don Fixler, M.D., Certified Nurse Practitioner (CNP) Monica Saleh, and consultative

examiner Christopher C. Ward, Ph.D.; and (3) the ALJ failed to properly evaluate plaintiff's

credibility and subjective complaints.  (Docs. 11 and 16).

1.  The ALJ's findings that fibromyalgia and generalized anxiety disorder are not severe
impairments and the effect on plaintiff's RFC.

In discussing her first assignment of error, plaintiff recounts the ALJ's findings at step

two of the sequential evaluation process, including his finding that plaintiff's diagnosis of

fibromyalgia is not a severe impairment.  (Doc. 11 at 7).  Plaintiff alleges the ALJ rejected Dr. Fixler's fibromyalgia diagnosis "on the ground that there are no notes concerning what tender points claimant exhibited and no indication that appropriate tests were conducted to exclude other diagnoses or rule out other possible causes of the exhibited symptoms"; therefore, plaintiff did not meet the requirements for a medically determinable impairment of fibromyalgia under Social Security Ruling (SSR) 12-2p, 2012 WL 3104869 (July 25, 2012)[1].  (Doc. 11 at 7, citing Tr. 14-15).  Plaintiff provides no further argument or evidence in support of any claim regarding the severity of her fibromyalgia impairment.

The Commissioner asserts that in her assignment of errors, plaintiff does not actually argue the ALJ should have found fibromyalgia to be a severe impairment and has thus waived that argument.  (Doc. 13 at 2).  The Commissioner contends that in any event, plaintiff failed to prove she had the additional medically determinable impairment of fibromyalgia or that such impairment imposed additional limitations on her RFC that the ALJ did not consider.  (Doc. 13 at 4).  The Commissioner further alleges that because the ALJ characterized at least one of plaintiff's impairments as severe, whether he categorized any other impairment as severe is of no import so long as the ALJ considered all of plaintiff's impairments at the remaining steps of the sequential evaluation process.  (Doc. 13 at 3, citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987)).

In her reply memorandum, plaintiff argues for the first time that the "ALJ used SSR 12-2p in an *adversarial* way to disregard not only the diagnosis of fibromyalgia, but its symptom complex as well."  (Doc. 16 at 3) (emphasis in the original).

---

[1] This Ruling provides guidance on how the agency both develops "evidence to establish that a person has a medically determinable impairment of fibromyalgia" and evaluates fibromyalgia in disability claims.  SSR 12-2p, 2012 WL 3104869, at *2.

The Court agrees with the Commissioner that plaintiff has waived any argument pertaining to her diagnosis of fibromyalgia. Plaintiff averts to the ALJ's findings pertaining to her fibromyalgia diagnosis in a perfunctory way in her statement of errors and does not present any arguments related to his findings. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Plaintiff argues in her reply brief that the ALJ misapplied the Social Security Ruling on fibromyalgia, but plaintiff may not raise this new issue for the first time in her reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy*, 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief."). The Court therefore declines to review any new claims of error raised in plaintiff's reply brief.

Next, plaintiff alleges that the ALJ erred by not finding a severe generalized anxiety disorder. Plaintiff asserts the ALJ failed to even mention this impairment in assessing plaintiff's step two severe impairments. Plaintiff contends the limitations resulting from her anxiety disorder to which she testified are supported by the reports of CNP Saleh, Dr. Fixler, and Dr. Ward.

The Commissioner contends that Dr. Ward's diagnosis of a generalized anxiety disorder says nothing about the severity of the condition and plaintiff has failed to prove her anxiety imposes additional limitations that the ALJ failed to include in the RFC. (Doc. 13 at 3). The

7

Commissioner also contends the ALJ considered plaintiff's complaints of anxiety and the opinions from Ms. Saleh and Dr. Ward in assessing plaintiff's RFC.  (*Id*. at 4).

In reply, plaintiff notes that Dr. Ward found plaintiff's self-reported information to be reliable, which would include her description of symptoms relating to "worry" such as concentration difficulties, insomnia, and situational panic.  (Doc. 16 at 4).  Plaintiff further notes that Dr. Ward described these problems when discussing whether plaintiff had limitations in her ability to respond appropriately to supervisors and co-workers, as well as to work pressures in a work setting.  (*Id*.).

Consulting psychologist Dr. Ward evaluated plaintiff for disability purposes in July 2011.  (Tr. 526-31).  Dr. Ward diagnosed plaintiff with a generalized anxiety disorder and a depressive disorder, and he assigned plaintiff a Global Assessment of Functioning (GAF)[2] score of 65, indicating only mild symptoms.  (Tr. 529-30).  Dr. Ward opined that plaintiff did not have any significant problems in understanding, remembering, and carrying out instructions, and she demonstrated only some difficulties with attention and focus, though she was able to complete a serial 3s task and displayed effective task persistence with no indication of distraction.  (Tr. 530).  Dr. Ward noted that plaintiff's nervousness may result in some social interaction limitations, and her reported anxiety symptoms may indicate some diminished tolerance of stress and work pressure.  (*Id*.).

Dr. Ward's report suggests that plaintiff's generalized anxiety disorder is a severe impairment because it is more than a "slight abnormality which has such a minimal effect on the

---

[2] The GAF scale rates an individual's "overall psychological functioning" from 0 to 100 at a given moment in time. This scale is meant to reflect an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 34 (4th ed., text rev.2000).  A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.,* depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id.*

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)).  Nevertheless, the ALJ's failure to identify plaintiff's anxiety disorder as a severe impairment is not reversible error.  An ALJ's failure to find a particular impairment severe at step two is harmless error where the ALJ determines that a claimant has at least one other severe impairment and properly considers all of the claimant's impairments, both severe and non-severe, in determining the claimant's residual functional capacity.  *Maziarz,* 837 F.2d at 244.  Here, the ALJ determined that plaintiff has both severe physical and mental impairments, including depression.  In assessing plaintiff's RFC, the ALJ explicitly accounted for plaintiff's anxiety disorder by limiting her social interactions and work pace:

> [Plaintiff] exhibited some nervousness during [Dr. Ward's] exam such that she would be limited to occasional social interaction and she described a somewhat diminished stress tolerance, which are accommodated by the restrictions for no fast-paced work or strict quotas and no more than occasional workplace changes.

(Tr. 20).  As the ALJ's decision indicates he properly considered and addressed all of plaintiff's severe and non-severe impairments, including plaintiff's anxiety disorder, in determining plaintiff's RFC, any error in not characterizing plaintiff's anxiety disorder as severe at step two is harmless.  Plaintiff's first assignment of error should be overruled.

    2.  <u>Weight to the opinions of treating physician Dr. Fixler, CNP Saleh, and consultative examiner Dr. Ward.</u>

    Plaintiff alleges that the ALJ erred in evaluating the medical opinion evidence.  Specifically, plaintiff alleges that the ALJ erred by applying greater scrutiny to the opinions of her treating physician, Dr. Fixler, and Nurse Practitioner Saleh than to the non-examining and consulting sources; failing to give "good reasons" for not affording "controlling weight" to the

opinions of Dr. Fixler; failing to specify the evidence in support of his conclusions to give great weight to the state agency reviewing physicians and psychologists; and "ignoring" the disabling findings Dr. Ward found on examination, despite giving Dr. Ward's opinion great weight.  (Doc. 11 at 12-15; Doc. 16 at 5-10).

### Dr. Fixler's opinion

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

10

to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." A nontreating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The opinion of a nontreating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 404.1527(c)(1). Because a nonexamining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a nonexamining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v. Comm'r of Soc. Sec.,* 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson,* 402 U.S. at 402). In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(i)).

11

Plaintiff alleges that the ALJ erred by failing to give "controlling weight" to the opinion of her treating primary care physician, Dr. Fixler, and to identify the reasons for giving only little weight to his opinion. (Doc. 11 at 21). The record shows that plaintiff has treated with Dr. Fixler and his nurse practitioner, CNP Saleh, from August 1988 through November 2012. (Tr. 340-522, 560-78, 586-648). Dr. Fixler's treatment notes show he monitored plaintiff's hypothyroid condition, pancreatitis, diabetes, and general medical condition. Plaintiff was also treated for back pain and arthritis and received medication management for anxiety and depression. (*Id.*). Dr. Fixler has been responsible for coordinating plaintiff's care with the other specialists of record.

In May 2012, Dr. Fixler listed plaintiff's diagnoses as diabetes, hypothyroid, depression, arthritis, anxiety, pancreatitis, deep vein thrombosis (DVT), insomnia, fibromyalgia, hyperlipidemia, osteoarthritis, and diabetic neuropathy. (Tr. 587). He opined that plaintiff could sit for no more than two hours at a time or two hours total in an eight-hour workday, stand for no more than two hours at a time or two hours total in an eight-hour workday, and walk for no more than one hour at a time. Dr. Fixler also found that plaintiff could only lift up to ten pounds occasionally. (*Id.*). Dr. Fixler checked a box indicating his agreement with a statement that plaintiff was disabled from performing work on a sustained basis. (Tr. 588).

The ALJ gave "little weight" to the opinion of Dr. Fixler. (Tr. 20). The ALJ determined that the level of limitation imposed by Dr. Fixler is "wholly inconsistent with the level of treatment" Dr. Fixler provided to plaintiff for her various complaints. (Tr. 20). The ALJ also determined there is no indication in Dr. Fixler's treatment notes that plaintiff would be as physically limited as Dr. Fixler assessed and there are no objective findings to warrant the

limitations he assessed. (*Id*.). The ALJ's decision giving Dr. Fixler's opinion little weight is supported by substantial evidence.

First, to the extent the ALJ gave little weight to Dr. Fixler's conclusion that he considered plaintiff to be totally disabled, the ALJ justifiably discounted Dr. Fixler's opinion. An ALJ is not required to accept a physician's conclusion that his patient is disabled. 20 C.F.R. §§ 404.1527(d)(1)(3), 416.927(d)(1)(3). Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that his patient is disabled will not be given "any special significance." *Id. See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

Second, the ALJ's reasons for giving little weight to Dr. Fixler's opinion find substantial support in the record. Plaintiff alleges that the ALJ did not provide any specific bases for his findings and the reasons he gave are not "good reasons" for declining to give the treating physician's opinion "controlling weight." (Doc. 11 at 14). Contrary to plaintiff's allegation, the ALJ thoroughly reviewed the medical and other evidence of record and provided "good reasons" for giving less than "controlling weight" to the opinion of Dr. Fixler. Although Dr. Fixler was plaintiff's long-time treating family physician, his treatment notes for the relevant time frame reflect conservative treatment. (Tr. 341-43, 346-50, 356, 561-66, 568-69, 572, 575, 591-92, 607, 610-11). As the ALJ reasonably noted, there is no evidence that plaintiff received physical therapy or other back pain treatment such as a TENS unit or epidural injections for back pain. (Tr. 19). He further noted that plaintiff's blood sugar is under good control and plaintiff's DVT is under good control with oral anticoagulant medication. (*Id*.). While plaintiff was hospitalized for an acute flare up of pancreatitis during the relevant time period, her condition resolved within

several months.  (Tr. 19, 534-35).  Plaintiff's receipt of conservative treatment is a "good reason"

for discounting Dr. Fixler's opinion.  *See Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, __ F.

App'x __, 2016 WL 124140, at *5 (6th Cir. Jan. 12, 2016) ("The ALJ noted that the records

indicate [the plaintiff] received only conservative treatment for her ailments, a fact which

constitutes a "good reason" for discounting a treating source opinion.") (citing *Lester v. Soc. Sec.

Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a doctor's

proposed limitations because, among other things, the claimant was receiving conservative

treatment); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir.

May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined

by his non aggressive treatment."); 20 C.F.R. § 404.1527(c)(2) ("We will look at the treatment

the source has provided . . . .")).  The ALJ also noted that there is no indication from Dr. Fixler's

treatment records that plaintiff would be as limited as he assessed.  (Tr. 20).  *See Kepke*, 2016

WL 124140, at *6 (plaintiff failed to point to any treatment notes showing treating physician

recommended restrictions similar to those listed in support of the disability claim) (citing *Essary

v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (treating doctor's "failure to

catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls

into question whether [the claimant] was in fact so restricted.")).  The ALJ acknowledged that x-

rays from May 2011 showed severe L5-S1 disc space narrowing, but he reasonably noted that

plaintiff received only minimal treatment for this condition and there was no objective evidence

showing nerve root compression or any other neurological involvement that would warrant a

conclusion that plaintiff would be limited to less than sedentary work as Dr. Fixler opined.  (Tr.

19).  Indeed, Dr. Fixler's treatment notes and plaintiff's other treatment records consistently

show unremarkable musculoskeletal and neurological findings.  (Tr. 341-43, 346-50, 356, 364,

14

502, 515, 518, 521, 544, 551, 553-55, 561-66, 568-69, 572, 575, 591, 607, 610-11, 615).  Dr.

Rosenfeld, the state agency reviewer, noted the severe disc space narrowing at L5-S1 but also

noted that on physical examination plaintiff displayed a normal gait, normal extremities, and no

edema in her extremities in assessing plaintiff's RFC for light work.  (Tr. 126, 130).  Plaintiff has

failed to direct the Court's attention to the medical evidence which purportedly supports Dr.

Fixler's opinion.[3]  The ALJ reasonably concluded that Dr. Fixler's records failed to reflect the

objective physical findings to support his extreme restrictions.  (Tr. 20).  The ALJ's reasons for

giving only little weight to Dr. Fixler's opinion constitute "good reasons" under the law and find

substantial support in the record.

Third, to the extent plaintiff argues the ALJ applied greater scrutiny to the opinion of Dr.

Fixler than to the opinions of the non-examining state agency physicians and consultants,

plaintiff has not developed this argument to any extent and has therefore waived it.  *See Rice,*

169 F. App'x at 454; *McPherson,* 125 F.3d at 995-96.  In any event, "[i]t cannot be said that the

ALJ did not subject the non-examining sources' opinions to scrutiny simply because he adopted

their opinions but discredited the treating source opinions."  *Kepke,* 2016 WL 124140, at *8.

### *CNP Saleh*

On January 18, 2012, CNP Saleh completed a mental status questionnaire at the request

of the state agency.  CNP Saleh reported that plaintiff appeared disheveled with a depressed

mood and flat affect.  Plaintiff had symptoms of anxiety such as panic, tightness in her chest, and

light-headedness.  CNP Saleh also determined that plaintiff had problems with short-term

---

[3] Plaintiff alleges that the ALJ overlooked records from September 2011 when he commented that "back pain was not included in her diagnoses" (Tr. 17) because records from that same date show plaintiff was treated for "arthritis." (Doc. 11 at 12, citing Tr. 569).  However, Dr. Fixler's treatment records show that he considered plaintiff's back and arthritis conditions to be separate impairments and a May 2010 treatment record indicates plaintiff's arthritis affected her knees and not her back.  (Tr. 342-43, 346, 348-49, 356).

memory, decreased concentration, and a short attention span.  Plaintiff was socially isolated and easily agitated.  Plaintiff was prescribed Celexa.  (Tr. 580-81).

That same day, CNP Saleh completed a daily activities questionnaire in which she indicated plaintiff had no difficulties getting along with family, friends, and neighbors, visited friends every two weeks and family every month, and worked fine with others, though she had poor stress tolerance.  Ms. Saleh also noted plaintiff prepared simple foods, had no problems with personal hygiene, and drove as needed, but she did not shop or do banking.  (Tr. 582-83).

The ALJ afforded Ms. Saleh's opinion "little weight." (Tr. 20).  The ALJ determined there is no evidence Ms. Saleh provided any significant mental health services to plaintiff and it appeared she made her assessment based on a single visit with plaintiff.  (Tr. 20).  Finally, the ALJ noted that Ms. Saleh is not an acceptable medical source for purposes of Social Security disability.

Plaintiff contends the ALJ erred in giving only little weight to Ms. Saleh's opinion.  She argues that the state agency was aware of Ms. Saleh's role in plaintiff's mental health treatment and sought her opinion.  (Doc. 11, citing Tr. 107).  Plaintiff alleges that Ms. Saleh's opinion was also signed by Dr. Fixler, suggesting that Dr. Fixler endorsed Ms. Saleh's opinion.  (*Id.*, citing Tr. 579).[4]

Certified nurse practitioners like Ms. Saleh are not "acceptable medical sources" and instead fall into the category of "other sources."  20 C.F.R. §§ 404.1513(d), 416.913(d).  Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's

---

[4] Plaintiff also alleges that the ALJ applied greater scrutiny to Ms. Saleh's opinion that to those of the state agency non-examining and consulting medical sources.  As indicated above, plaintiff has neither explained nor developed this argument and has therefore waived it for purposes of judicial review.  *See Rice*, 169 F. App'x at 454; *McPherson*, 125 F.3d at 995-96.

ability to function.  Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  It may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.  *Id*.  Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in a professional capacity include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment.  *Id.  See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).  Not every factor will apply in every case.  SSR 06-03p.  The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p, 2006 WL 2329939, at *6.

The ALJ's weighing of Ms. Saleh's opinion is substantially supported by the record.  As the ALJ reasonably noted, plaintiff received little treatment for her mental health concerns.  (Tr. 19, 20).  She did not participate in mental health therapy and her treatment notes make little mention of mental health concerns.  (Tr. 19).  Plaintiff's treatment records from Dr. Fixler/Ms. Saleh routinely reflect unremarkable psychiatric findings.  During the relevant time frame, plaintiff was alert and oriented x3, displayed a normal mood and affect, and did not complain about symptoms of depression and anxiety.  (*See, e.g.*, Tr. 341, 342, 343, 346, 347, 348, 349, 350, 561, 562, 564, 565, 566, 568-69, 572, 574, 590-591, 611).  The progress notes do not reflect memory, attention, or aggression problems as noted by Ms. Saleh in her questionnaire.  (Tr.

17

580). Plaintiff has failed to direct the Court's attention to any subjective or objective findings to support Ms. Saleh's assessed limitations. In addition, and contrary to plaintiff's allegation, there is no evidence that Dr. Fixler endorsed Ms. Saleh's questionnaire. The transcript page cited by plaintiff shows only a question about Dr. Fixler's willingness to perform a new examination or testing, to which Dr. Fixler responded "no," and a signature line with Dr. Fixler's signature. (Tr. 579). There is nothing in this form to indicate he endorsed Ms. Saleh's assessed limitations. The ALJ considered the relevant factors set forth in SSR 06-03p and did not err in weighing this "other source" opinion.

*State agency physicians/psychologists*

While plaintiff does not specifically allege that the ALJ erred by giving "great weight" to the opinions of state agency physicians and psychologists, she challenges the evidentiary basis for the ALJ's conclusion. Plaintiff alleges the ALJ failed to identify "the records" upon which he based his conclusions. She also argues that the ALJ was not qualified to conclude that the state agency psychologists' reports were "consistent with the claimant's mental health treatment history" without relying on other evidence. (Doc. 11 at 12, 13). Plaintiff contends the ALJ's decision fails to identify the evidence upon which the ALJ relied to permit meaningful judicial review of these opinions.

The ALJ's decision is sufficiently specific to allow this Court to perform its judicial review function. In assessing plaintiff's RFC, the ALJ's decision sets forth in detail his consideration of plaintiff's allegations of pain and limitations; plaintiff's activities of daily living and social functioning; plaintiff's physical and mental impairments and the alleged limitations resulting from these impairments; and the opinion evidence from the treating and non-treating medical sources. (Tr. 17-20). The undersigned is able to reasonably discern the evidentiary

18

basis for the ALJ's decision to credit the opinions of the state agency consultants in limiting plaintiff to a range of light work with certain non-exertional restrictions.  The ALJ reasonably concluded that the state agency consultants' opinions that plaintiff could perform a range of light work with certain non-exertional restrictions are supported by the generally conservative treatment plaintiff received for her various impairments, her lack of any significant mental health treatment, and the unremarkable musculoskeletal, neurological, and psychiatric findings set forth in Dr. Fixler's and Ms. Saleh's progress notes.  The ALJ extensively reviewed the medical and other evidence when assessing the severity of the limitations imposed by plaintiff's physical and mental impairments.  (Tr. 17-20).  The ALJ reasonably relied on objective medical findings, plaintiff's subjective reports, and plaintiff's activities in giving great weight to the opinions of the state agency consultants.  The ALJ did not err in weighing the opinions of the consultants and fashioning an RFC that incorporated only those limitations that the ALJ found to be substantially supported by the evidence of record.  The ALJ complied with his duty in weighing these opinions in accordance with 20 C.F.R. §§ 404.1527, 416.927 by considering the supportability of the opinions with the record as a whole.

### Dr. Ward

Plaintiff alleges that Dr. Ward determined that plaintiff's mental impairments "significantly compromised her work related ability to 'respond appropriately to stress and pressures in a work setting' in a number of ways."  (Doc. 11 at 10, citing Tr. 529, 531).  She argues that the ALJ "ignored" the "disabling characteristics found on examination" by Dr. Ward, despite giving Dr. Ward's opinion great weight.  (Doc. 11 at 13).

Contrary to plaintiff's argument, the ALJ did not ignore Dr. Ward's findings and reasonably accommodated them in assessing plaintiff's RFC.  Dr. Ward did not assess "disabling

19

characteristics" on examination as plaintiff alleges.  Rather, Dr. Ward opined that testing suggested only "some" difficulty with attention and focus and plaintiff displayed effective task persistence on testing with no indication of distraction.  (Tr. 530).  Dr. Ward opined that plaintiff's nervousness "may affect [her] level of engagement with co-workers and supervisors" and her intellectual functioning suggested "no cognitive impairment understanding or responding to supervisor feedback and adequately relating to co-workers."  (Tr. 531).  Dr. Ward stated that plaintiff's depressive symptoms "may compromise [her] ability to respond to work pressures and lead to increased emotional instability and withdrawal" and her symptoms of anxiety "may compromise [her] ability to respond to work pressures and lead to increased likelihood of agitation and conflicts with others."  (*Id*).  The ALJ reasonably accommodated the symptoms described by Dr. Ward by limiting plaintiff's social interactions and work pace in the RFC.  The ALJ found that plaintiff would be limited to only occasional contact with co-workers, supervisors, and the public, and he accommodated plaintiff's diminished stress tolerance by restricting her to work that was not fast-paced, did not involve strict production quotas, and involved no more than occasional workplace changes.  (Tr. 16, 20).  Plaintiff has not explained how the RFC restrictions imposed by the ALJ fail to sufficiently account for the opinion of Dr. Ward.  Thus, the ALJ did not err in assessing Dr. Ward's opinion.

> 3. The ALJ's credibility finding.

Plaintiff alleges that the ALJ erred in assessing her credibility.  (Doc. 11 at 15-17, Doc. 16 at 7-9).  Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged;

second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ cited five primary reasons for finding that plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude light work: (1) plaintiff's diabetes was under good control; (2) she received minimal treatment for back pain; (3) her pancreatitis was episodic in nature and did not occur with the severity or regularity such that she would be unable to maintain a regular work schedule; (4) her DVT was under good control with medication; and (5) she received little in the way of treatment for her mental health conditions. (Tr. 19). The ALJ also considered a third-party function report submitted by plaintiff's sister but gave it only partial credit because the limitations contained therein were not supported by the medical evidence of record. (*Id.*).

21

Plaintiff challenges the ALJ's statement that her blood sugars were under good control, stating she became insulin-dependent in 2011 and suggesting the ALJ ignored this fact. But the ALJ specifically acknowledged that plaintiff was an insulin dependent diabetic; he reviewed her A1C levels for the relevant time frame; and he concluded based on this medical evidence that her blood sugar was under good control. (Tr. 18, citing Tr. 435, 625, 636, 644). Plaintiff also takes issue with the ALJ's rationale for discounting her complaints of back pain. Plaintiff alleges there is no medical support for the ALJ's statement concerning the absence of imaging showing nerve root compression or any neurological involvement to warrant less than light work activity. However, the x-ray findings from May 2011 support the ALJ in this regard (Tr. 19, 481), and the lack of significant objective evidence is a relevant factor in determining the credibility of plaintiff's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). In addition, as explained above, the ALJ reasonably considered plaintiff's conservative treatment and lack of treatment modalities other than pain medication in discounting plaintiff's complaints of disabling pain. (Tr. 19). *See Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1001-02 (6th Cir. 2011) (ALJ properly noted that plaintiff's "modest treatment regimen [ ]-consisting solely of pain medication-was inconsistent with a finding of total disability") (citing *Myatt v. Comm'r of Soc. Sec.,* 251 F. App'x 332, 334-35 (6th Cir. 2007)).[5] The ALJ also reasonably determined that the evidence of plaintiff's mental impairments did not support plaintiff's allegations of disabling symptoms. Plaintiff points out that Dr. Ward,

---

[5] Plaintiff does not take issue with the third and fourth reasons given by the ALJ for discounting plaintiff's credibility.

22

the consultative psychologist, reported that plaintiff did not exaggerate or minimize her difficulties and her self-reported information appeared to be reliable, and thereby suggested her complaints of disabling symptoms were credible. (Doc. 16 at 8). However, Dr. Ward did not assess disabling limitations as plaintiff previously alleged and, as explained above, the ALJ reasonably accommodated Dr. Ward's limitations in fashioning plaintiff's RFC. Finally, plaintiff alleges there was not a substantial basis for the ALJ's finding that the third-party statement of plaintiff's sister, who alleged the same level of limitation that plaintiff reported, was only partially credible. (Doc. 11 at 17). However, plaintiff acknowledges that the ALJ determined that the extent of the limitations alleged in that report were inconsistent with the medical evidence of record. As discussed more fully above, the ALJ's finding that plaintiff's alleged limitations and complaints were not fully credible is substantially supported by the record and, by extension, the ALJ's finding on the third-party report is similarly supported.

Thus, plaintiff has not shown that the ALJ committed any error in connection with the assessment of plaintiff's credibility. The ALJ thoroughly evaluated the relevant factors and evidence of record and the reasons posited for his credibility finding are substantially supported by the record. The ALJ's credibility finding is entitled to deference and plaintiff's third assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 1/20/2016

Karen L. Litkovitz
United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SANDRA ANN WILLIAMSON,
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-CV-731
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).